UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WALID TAHA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-2060 |
| | § | |
| WILLIAM MARSH RICE UNIVERSITY, | § | |
| | § | |
| *Defendant.* | § | |

ORDER

Pending before the court are defendant William Marsh Rice University's ("Rice") motion to partially dismiss (Dkt. 8) and plaintiff Walid Taha's ("Taha") motion for leave to amend the original complaint (Dkt. 9). Having reviewed the motions, related documents, and applicable law, the court is of the opinion that the motion to partially dismiss should be GRANTED IN PART and DENIED IN PART, and the motion for leave to amend should be GRANTED.

I. BACKGROUND

This case concerns employment discrimination, breach of contract, and fraud claims. These claims arise out of Taha's denial of tenure as a professor at Rice. Dkt. 1. Taha is a research scientist and was previously an assistant professor in the Computer Sciences Department ("Department") at Rice. *Id.* Assistant professors are appointed to an initial term of four years and, if reappointed, serve a second term for an additional four years. Dkt. 8. If the assistant professor is not promoted to tenured professor by the end of the seventh year, the eighth year serves as his final year in Rice's professorial ranks. *Id.*

Taha is a Muslim born in Egypt and educated at Kuwait University. Dkt. 1. He began his employment with Rice in August of 2002. *Id.* Taha alleges that in 2004 the professor who was in charge of graduate admissions for the Department at the time, Joe Warren, made a derogatory

comment about Egyptian students, in general, and made unusual and onerous requests of an Egyptian student who was applying for graduate admission.  *Id.*  When Taha questioned Warren about the unusual requests, Warren allegedly became angry and threatened Taha, stating, "Wait until you are up for tenure."  *Id.*  Taha immediately advised Keith Cooper, the Department Chair at the time, about Warren's conduct.  *Id.*  Taha alleges that Cooper believed the "complaint sounded in racial discrimination," and that Cooper told Taha that Warren would talk to Taha about the comments.  *Id.* However, Warren never discussed the matter with Taha.  *Id.*

Warren later became Department Chair.  *Id.*  When Taha applied for early tenure, Taha requested that Warren recuse himself from the tenure committee, but Warren refused to do so.  Taha also requested that the dean remove Warren from the committee, but the dean did not remove Warren.  *Id.*  Taha claims that Warren discriminated and retaliated against him during the tenure process by making false accusations to the committee.  *Id.*  Taha states that he was eventually able to present evidence to the committee demonstrating that Warren's accusations were without merit, but the tenure review process was already tainted.  *Id.*  Ultimately, the Department recommended against tenure, claiming that Taha's teaching was not up to Rice's standards.  *Id.*

Taha claims that he was denied "constructive criticism and peer review necessary to provide a response to any perceived deficiencies in his tenure resume," which "materially affected his tenure application and dossier," because he did not receive faculty performance reviews as required by University Faculty Policy No. 214-03 ("214-03").  *Id.*  Taha states that he made requests on numerous occasions to the Department for reviews to be performed regularly, in accordance with 214-03.  *Id.*  Taha allegedly requested that performance reviews be conducted on an annual basis to assist him in evaluating his growth as a professor and to address any perceived shortcomings by the

Department with respect to the achievement of tenure.  *Id.*  However, according to Taha, Rice violated University policies because Taha did not receive these reviews.  *Id.*

Taha brought this lawsuit on June 2, 2011.  *Id.*  Taha asserts claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as well as common-law claims for breach of contract, fraud, negligent representation, and detrimental reliance.  *Id.*  Taha claims, under Title VII, that many of the problems and obstacles he encountered during the tenure process were motivated by his national origin or religion or were in retaliation for his 2004 complaint against Warren relating to Warren's alleged disparate treatment of a student applying for graduate admissions.  *Id.*  Taha also asserts a breach of contract claim, asserting that the University Faculty Handbook, Policies 201-01 and 201-04 ("Faculty Appointments, Promotion, and Tenure" and "Guidelines for Faculty Appointments, Promotion, Tenure and Renewal of Contracts"), as well as 214-03, were part of his employment contract with Rice, and that Rice breached that contract by not providing him with written performance reviews.  *Id.*  Additionally, Taha asserts a claim for fraud, negligent misrepresentation, and detrimental reliance.  *Id.*  Taha states that Rice intentionally made false representations to him that if he performed in a certain manner he would be granted tenure.  *Id.*  In the alternative, Taha claims that Rice made such statements without the exercise of reasonable care or competence in obtaining or communicating the false information, and that Taha detrimentally relied upon the statements.  *Id.*

Rice moves to dismiss the breach of contract claim under Rule 12(b)(6) because it is barred by the statute of limitations, and it moves to dismiss the fraud claim under Rule 9(b) because it does not meet the Rule's particularity requirements. Dkt. 8.  Taha claims 214-03 requires Rice to provide a written statement of deficiencies, and it does not establish a deadline, so Rice was required to provide the statement within a reasonable time, and the reasonableness of the time is a question for

3

the factfinder.  Dkt. 10.  Additionally, Taha argues that he had no way of knowing that Rice felt his performance was deficient, and when a breach of contract (the failure to provide a statement of deficiencies) is concealed from the plaintiff, the discovery rule should be applied to delay the date from which the statute of limitations begins to accrue.  As for the fraud claim, Taha moves for leave to file an amended complaint under Federal Rule of Civil Procedure 15(a) to provide additional specificity regarding his fraud claims and to supply additional information about his breach of contract claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal of a complaint if it believes that the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Aschroft v. Iqbal,* 566 U.S. 662, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955 (2007).  The court accepts as true all facts alleged in a complaint, and views the facts in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  A plaintiff's complaint survives a Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955 (2007).[1]  The supporting facts must be plausible—enough to raise a reasonable expectation that

---

[1]  In his response and sur-reply, Taha states that a Rule 12(b)(6) motion must be denied unless it appears to a certainty that a plaintiff can prove no set of facts that would enable him to relief.  Taha cites to *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) to define the test for dismissal

discovery will reveal further supporting evidence. *Twombly*, 127 S.Ct. at 1965. This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Thus, the plaintiff must demonstrate "more than a sheer possibility that the defendant has acted unlawfully." *Id.* Furthermore, while the court must accept well-pleaded facts as true, it will not "strain to find inferences favorable to the plaintiff." *Southland Securities Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004).

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Federal Rule of Civil Procedure 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the

---

under 12(b)(6). However, *Conley v. Gibson* was abrogated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955 (2007). The plausibility standard is the correct test for dismissal.

events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, "Rule 9(b)'s ultimate meaning is context-specific."  *Grubbs*, 565 F.3d at 185. Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

### III. ANALYSIS

#### A.   Breach of Contract Claim

Rice argues that Taha's breach of contract claim is barred by the statute of limitations.  Dkt. 8. A complaint may be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling.  *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011). The statute of limitations applicable to causes of action for breach of contract is found in the Texas Civil Practice and Remedies Code, which states that "[e]very action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code Ann. § 16.051.  Therefore, a party asserting a breach of contract claim must sue no later than four years after the day the claim accrues.  *Id.*  It is well-settled law that "a breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).  Specifically in Texas, a breach of contract claim has a four-year statute of limitations and accrues upon breach.  *Id.*

Rice claims that under the facts alleged in Taha's complaint, his breach of contract claims accrued in 2004 and 2005.  In support of this argument, Rice cites to the actual language of 214-03 to show when Taha's performance reviews should have occurred.  Policy 214-03 states:

> Each non-tenured tenure track faculty member should receive an initial written
> performance evaluation by his or her department chair during the fourth semester of

6

a first four-year contract.  In the event that deficiencies are noted, the chair should provide a written statement to that effect to the faculty member and copies should be entered into the department files and forwarded to the Dean and to the Provost.

By the end of the first month of the sixth semester of a first four-year contract term, a second written performance evaluation should be provided by the department chair to each candidate for renewal, and this evaluation will serve as a partial basis for the departmental recommendation, later that semester, about renewal to a second term.

Dkt. 8, Exh. C.[2] Rice argues that under 214-03 Taha would have only been entitled to two performance reviews:  (1) during Taha's fourth semester at Rice, which was the Spring semester of 2004, and (2) at the end of the first month of his sixth semester, or January 2005.  Dkt. 8 & Exh. C. According to Rice, the latest Rice could have possibly breached any obligation to provide Taha performance reviews was January 31, 2005, which is the end of the first month of his sixth semester as a Rice assistance professor.  Dkt. 8.  Since Taha filed this suit on June 2, 2011, more than six years later, if the cause of action accrued when the last performance evaluation was due, any claim for breach relating to failure to provide the review would be barred by the four-year statute of limitations. *Id.*

Taha asserts that Rice improperly conflates two separate requirements under 214-03 concerning the initial evaluation that should have been provided to Taha.  Dkt. 9.  Taha alleges that although 214-03 establishes a deadline for the provision of the initial written performance evaluation, it does *not* establish a deadline for the written statement in connection with deficiencies noted. Dkt. 9.  Taha argues that since no time is specified for the written statement, Texas law implies that

---

[2]  When the plaintiff's complaint references a document, but does not attach the document to the pleading, the Court may consider the document if it meets three criteria: (1) it is referenced to the plaintiff's claims, (2) it is central to the plaintiff's claims, and (3) it is attached to the defendant's motion to dismiss.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Since these factors are met, this Court may consider the policies referenced in Taha's Complaint for purposes of Rice's 12(b)(6) motion.

Rice had a "reasonable time" to provide the statement to Taha.  *Id.*  Taha further asserts that the determination of what time period is reasonable is a question for the finder of fact.  *Id.*

Rice argues that Taha's distinction between the initial performance evaluation and the written statement is an unreasonable interpretation of the policy because under the clear terms of the policy, the written statement would only be received after receipt of a performance evaluation noting deficiencies.  Dkt. 9.  Rice states that even if the requirement to provide an evaluation and a written statement of deficiencies could be read as two distinct obligations, any calculation of a reasonable time would fall short of the limitations cut-off by several years.  *Id.*  Rice offers factors that the Court should consider when determining what is a reasonable time, and asserts that such a determination is a question of law for the court.  *Id.*  Rice also argues that even if the Court finds that "more than three years" is a reasonable time to provide a written statement to Taha, an obligation to provide such a written statement never arose because that particular obligation was contingent on Taha's receipt of a written performance evaluation, an event that Taha's complaint alleges never occurred.  *Id.*

The court agrees with Rice.  According to 214-03, Taha should have received written performance evaluations by Rice during the fourth semester of his first four-year contract and by the end of the first month of the sixth semester of his first four-year contract term.  Dkt. 8, Exh. C.  Taha began his employment with Rice in August of 2002.  Dkt. 1.  This means that under 214-03, Taha should have received written performance evaluations during the Spring semester of 2004 and in January of 2005, respectively.  Taha filed his original complaint on June 2, 2011, more than six years after the alleged breach relating to a failure to provide a written performance evaluation occurred.  Under the facts presented in the pleadings, Taha did not file this suit within the four-year statute of limitations applicable to breach of contract claims in Texas, and he therefore fails to state a claim for breach of contract relating to Rice's alleged failure to provide a written performance evaluation.

With regard to Taha's claim that Rice breached its contract with him by failing to provide a written statement of deficiencies within a "reasonable time," the language of 214-03 clearly states that Taha should have received an initial written performance evaluation during the fourth semester of his first four-year contract.  Dkt. 8, Exh. C.  Policy 214-03 then immediately states that "*in the event* that deficiencies are noted, the chair should provide a written statement to that effect to the faculty member . . . ."  *Id.* (emphasis added).  Thus, under the plain language of 214-03, Rice was obligated to provide a written statement only *in the event* that the initial written performance evaluation noted deficiencies.  Taha states numerous times in his complaint that he never received the required faculty performance evaluations under 214-03.  Since Taha never received the initial written performance evaluation, he would not have received the written statement, which was contingent on receipt of the initial written performance evaluation.  Accordingly, Taha fails to state a claim for which relief can be granted for breach of an obligation to provide a written statement of deficiencies, as no obligation to provide a statement ever arose.[3]

Taha argues that the court should not dismiss his claim under the statute of limitations because the discovery rule should apply to defer the accrual of his breach of contract claim, asserting that he had no way of knowing that the Department thought his teaching abilities were deficient.  The discovery rule provides a very limited exception to statutes of limitations.  *Computer Assocs. Int'l, Inc. V. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  The discovery rule defers accrual of a cause of action if (1) the nature of the injury incurred is inherently undiscoverable and (2) the evidence of injury is objectively verifiable.  *Id.*  The overall purpose of these factors is "to prevent both stale and fraudulent claims from being asserted in contravention of the policies behind the statutes of

---

[3] Since Rice prevails on this argument, there is no need to address the issue of what may or may not constitute a reasonable time for performance.

limitations." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).  An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.  *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001).

The discovery rule does not save Taha's breach of contract claim.  First, to the extent Taha's breach of contract claim is based on Rice's alleged failure to provide a written performance evaluation, Taha is presumed to have known that the performance reviews were due under the policy at the time they were due—in 2004 and 2005—because, under Texas law, a party to a contract is presumed to have read and understood its contents.  *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, LTD.*, 264 S.W.3d 892, 904 (Tex. App.—Ft. Worth 2008, no pet.).  The policy, which Taha contends is part of his employment contract, clearly states that reviews were due during the fourth semester of Taha's first four-year contract and the end of the first month of the sixth semester, which both occurred more than four years before Taha filed suit.  Since Taha is presumed to have known that the policy required Rice to provide reviews and he obviously knew he did not receive reviews, the injury was not inherently undiscoverable at the time.  Moreover, even without this presumption, it is clear from Taha's complaint that Taha was aware that Rice was required to provide reviews yet failed to do so.  The complaint states, "Taha made requests to the Department and the Department Chair for reviews to be performed regularly in accordance with 214-03, . . . [yet] [de]espite Taha's repeated requests, Taha did not receive annual reviews by the Department."  Dkt. 1.  Second, to the extent Taha's breach of contract claim is based on Rice's alleged failure to provide a written statement of deficiencies, since Taha has failed to assert that Rice breached an obligation to provide a statement of deficiencies, there is no need to ascertain when Taha should have known about the alleged breach.

Furthermore, even if Rice's alleged breach or breaches was inherently undiscoverable, Taha has failed to affirmatively plead the discovery rule and failed to allege facts supporting the application of the discovery rule.   Under Texas law, a "party seeking to avail itself of the discovery rule must . . . plead the rule, either in its original petition or in an amended or supplemental petition in response to defendant's assertion of the defense as a matter of avoidance." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  Taha merely mentioned the discovery rule at the end of his response to Rice's motion to dismiss—he has not pled the rule.  Taha has therefore waived his ability to use the rule to avoid the statute of limitations.  *Id.*

In sum, Taha's breach of contract claim either fails because he fails to allege breach or because the facts alleged clearly establish that he filed suit after the expiration of the statute of limitations and that he knew or should have known about the claim or claims within the limitations period.  Taha thus fails to state a claim for breach of contract.  Rice's motion to dismiss Taha's breach of contract claim is therefore GRANTED.

## B.     Fraud Claim

Rice argues that Taha's fraud claim does not meet the particularity requirements under Rule 9(b).  Dkt. 8.  Although Taha's complaint alleges that Rice made representations to him that if he followed certain procedures and performed in a certain manner he would be granted tenure, Rice argues that Taha fails to identify who made the alleged representations, what the speaker gained by making the representations, when the representations were made, where they were made, or why they were fraudulent.  *Id.*

In response to Rice's Rule 9(b) motion, Taha seeks leave to file an amended complaint to provide additional specificity about the alleged misrepresentations that form the basis of Taha's fraud claims.  Dkt. 9.  Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to

amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  Substantial reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party."  *Id.* None of these reasons applies here.  Taha's motion to amend is therefore GRANTED.  Because Taha will amend the original complaint to address Rice's concerns with regard to Rule 9(b), Rice's motion to dismiss Taha's fraud claim is DENIED AS MOOT.

## IV. CONCLUSION

Rice's motion to partially dismiss (Dkt. 8) is GRANTED IN PART AND DENIED IN PART. Rice's motion to dismiss Taha's breach of contract claim is GRANTED.  Taha's breach of contract claim is DISMISSED WITH PREJUDICE.  Rice's motion to dismiss the fraud claim is DENIED AS MOOT.  Taha's motion for leave to amend (Dkt. 9) is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on December 6, 2011.

_____
Gray H. Miller
United States District Judge